UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AVA WADDELL, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:14-CV-01473 |
| § | |
| MUSTANG ENGINEERING L.P., *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Pending before the Court is the defendant's, Mustang Engineering L.P. ("Mustang"), motion for summary judgment and brief in support of its motion for summary judgment (Dkt. Nos. 17 and 18).  The plaintiff, Ava Waddell ("Waddell"), has filed objections to certain facts contained in Mustang's summary judgment brief (Dkt. No. 19)[1] and a response in opposition to the motion (Dkt. No. 20).  Mustang has filed a reply (Dkt. No. 21).  After having carefully considered the motion, response, reply, the record and the applicable law, the Court determines that Mustang's motion for summary judgment should be **GRANTED**.

**II.   FACTUAL OVERVIEW**

This is an employment case in which Waddell, a former employee, alleges that Mustang terminated her employment in violation of the anti-retaliation provision of the Fair Labor Standards Act ("FLSA").  On March 10, 2012, Waddell began employment with Mustang as a Senior Administrative Assistant.  (*See* Dkt. No. 20, Ex. A at 34).  On average, Waddell worked 60 hours a week.  (*See* Dkt. No. 18, Ex. C at 17).  To receive pay, Mustang employees were

---

[1] While Waddell has filed this separate document lodging several objections, it appears that the only valid legal objections raised is contained in paragraph 3 concerning hearsay and opinion testimony.  With regard to Waddell's paragraph 3 objections, the Court overrules them.

required to submit timecards through an Oracle system. (*See* Dkt. No. 20, Ex. A, Waddell Depo. at 85:19-86:12). In January 2013, Waddell began reporting to Laura Gerstner ("Gerstner"), the Project Administrative Support Manager, who directly supervised her. (*See* Dkt 18, Ex. A, Waddell Depo. at 28:16-22; *see also* Ex. B, Gerstner Declar. ¶ 2-3). In addition, Gerstner was responsible for supervising timecard submittals for the department. (*See* Dkt 18, Ex. B, Gerstner Declar. ¶ 3). At all relevant periods of Waddell's employment, Mustang maintained a company paid time off ("PTO") policy that stated, in pertinent part, "[w]hen calculating overtime, PTO counts toward the accumulation of 40 hours but will not be counted as overtime or be paid at the overtime rate." (Dkt. No. 20, Ex. A, Waddell Depo. at 85:6-18; Ex. C at 10; *see also* Munoz Depo. at 42:11-16). During the first eighteen months of Waddell's employment, Mustang allowed her to claim PTO at the overtime rate. (*See* Dkt. No. 20, Ex. A, Waddell Depo. at 89:6-23).

Starting in March 2013, Waddell was repeatedly counseled by Gerstner for sending inappropriate emails to her managers and other employees. (*See* Dkt 18, Ex. A, Waddell Depo. at 55:3-20; *see also* Ex. B, Gerstner Declar. ¶ 5). In spite of the counseling, Waddell failed to comply with Mustang's performance expectations. On March 4, 2013, for example, in response to a company-wide email from Mustang's Vice President of Corporate Services regarding conservation measures, Waddell requested trash can liners for the employees with the following reply: "The $22k spent on cups each year does not compare to the entertainment costs each year just during the weekend allowances, so I assume upper management pick and choose where the money will be spent, or maybe even putting the Styrofoam cup savings into your extravagant golf weekends." (Dkt. No. 18, Ex. A at 34-36; *see also* Ex. B, Gerstner Declar. ¶ 6). Mustang particularly noted Waddell's conduct as inappropriate because she copied the CEO of Mustang's

parent company on her reply.[2] (*See* Dkt. No. 18, Ex. A, Waddell Depo. at 60:8-15). As a consequence, on June 21, 2013, Waddell received a "progressive discipline verbal warning" and was ordered to complete an online communications training course. (*See* Dkt. No. 18, Ex. C at 11-15; *see also* Ex A, Waddell Depo. at 55:3-56:4, 76:14-22, 79:5-80:17). Waddell completed the course. (*See* Dkt. No. 18, Ex A, Waddell Depo. at 82:9-12). On May 22, 2013, Waddell received an overall performance rating of 4.55 out of 5.00 on her only employment evaluation. (*See* Dkt. No. 20, Ex. A at 35-36).

On September 18, 2013, Gerstner disseminated a "revised PTO policy" to the administrative staff highlighting that PTO would no longer be counted as overtime or be paid at the overtime rate. (*See* Dkt. No. 18, Ex. A at 45-46). While Gerstner characterized the new development as a policy change, the policy was not new. (*See* Dkt. No. 20, Ex. C, Munoz Depo. at 42:11-16). Mustang simply intended to enforce its already existing policy that had not been strictly enforced in the past. On September 30, 2013, the first pay period after Gerstner announced the revised PTO policy, Waddell submitted a timecard that included 4 hours of PTO counted as overtime pay in contravention to the policy. (*See* Dkt. No. 18, Ex. A at 47; *see also* Waddell Depo. at 105:11-24). Gerstner rejected Waddell's timecard with an instruction to remove the 4 hours in accordance with the new PTO policy. (*Id.*; Waddell Depo. at 105:11-106:3; 113:16-25; 123:11-15). Waddell then contacted Mark Harberts ("Harberts") with

---

[2] The record also indicates that on June 10, 11 and 12, 2013, Waddell sent a series of emails to the manager and director of Mustang's engineering department suggesting that the company create an engineering tech position for her. Mustang particularly noted the tone and unprofessionalism of Waddell email response because it stated the following:

> What you are really saying, unless I have a degree, I cannot be promoted as an Engineering Tech here at [Mustang], even though I am already doing work beyond that of an administrative assistant. ……… and by agreeing to this, I also assume you are also saying that EVERY engineer, designer, or architect direct hired, regardless of years of experience, is degreed, and the non-degreed hired in those positions, are ALL contractors?!?!?? . . .

(Dkt. No. 18, Ex. A at 39; Waddell Depo. at 79:5-13) (emphasis in original).

Mustang's Oracle Applications & Technical Support team to verify if she had properly submitted her timecard, despite Gerstner's rejection. (*See* Dkt. No. 20, Ex. B at 3; Ex. C at 15; Dkt. No. 18, Ex. C at 17-18). On October 21, 2013, the second pay period after Gerstner announced the revised PTO policy, Waddell submitted a timecard that included additional PTO counted as overtime pay in contravention to the policy.[3] (*See* Dkt. No. 18, Ex. A at 48; *see also* Waddell Depo. at 125:9-12). Gerstner rejected the timecard with an instruction to revise according to the new PTO policy. (*See* Dkt. No. 18, Ex. A, Waddell Depo. at 125:25-126:16). On November 4, 2013, the third pay period after Gerstner announced the revised PTO policy, Waddell submitted a timecard that included 16 hours PTO counted as overtime pay in contravention to the policy. (*See* Dkt. No. 18, Ex. A at 52; *see also* Waddell Depo. at 133:6-134:5). Gerstner rejected the timecard with an instruction to revise according to the new PTO policy. (*See* Dkt. No. 18, Ex. A at 51, Waddell Depo. at 133:6-23).

Admittedly, Waddell acknowledged that she anticipated her timecards would be rejected, but submitted them anyway. (*See* Dkt. No. 18, Ex. A at 49; *see also* Waddell Depo. at 125:9-24). After the rejections, Waddell sent Mustang what it described as combative and disrespectful emails on October 21 and November 4, 2013 voicing her objections to the PTO policy. (*See* Dkt. No. 18, Ex. A at 48-51). The emails did not allege that Mustang's PTO policy violated her rights under the FLSA, only that she should continue to be compensated under the old system. (*Id.*). Later on November 4, 2013, Waddell was terminated from Mustang. (*See* Dkt. No. 18, Ex. B at 12-16). On November 14, 2013, Waddell sent an email to several Mustang employees notifying them that she was terminated and working with Mustang's Ethics department on a discrimination claim, in which she asked, "[i]f you know of anyone who has been paid PTO hours and worked more than 40 hours in the same week, please forward their names to: Dianna

---

[3] The record is unclear on how much PTO Waddell requested on this timecard submittal.

Jones … dianna.jones@woodgroup.com[.]" (Dkt. No. 20, Ex. B at 2).  The record is unclear if any names were forwarded.  However, on November 15, 2013, Merri Ziemak ("Ziemak") replied to Waddell's email stating the following:

> I don't really understand this. I have worked at Mustang for 25 years and it has always been that your PTO counts as straight time worked. Since I am in a department that gets paid OT, then in your case I would get paid for 40 straight time hours and 17 overtime hours. If you are an employee that doesn't get OT then I would think you would have gotten paid for 57 straight time hours. My department on Ichthys is scheduled to work 60 hours per week. I have folks in my group that charge PTO hours just to be able to get a total of 60 hours for the week.

On May 27, 2014, Waddell commenced the instant action against Mustang alleging a claim for retaliation under the FLSA because she was terminated from her employment for complaining to management regarding their interpretation of Mustang's PTO policy.  Mustang now moves for summary judgment on Waddell's claim.

### III.    CONTENTIONS OF THE PARTIES

#### A.    Mustang's Contentions

Mustang argues that Waddell was discharged as a result of her refusal to comply with the PTO policy and her supervisor's directives.  In addition, she was insubordinate when she communicated with her manager, human resources ("HR") and other Mustang officers.  As such, Mustang asserts that Waddell's retaliation claim fails because she is unable to demonstrate that she engaged in "protected activity" within the meaning of the FLSA.  Mustang also contends that Waddell cannot establish a "but for" causal connection between her alleged protected activity and termination.  Further, Mustang avers that Waddell is unable to demonstrate that Mustang's legitimate, nondiscriminatory reasons for terminating her were merely a pretext for retaliation.  As a result, Mustang contends that it is entitled to summary judgment as a matter of law.

### B. Waddell's Contentions

Waddell argues that evidence exist establishing that Mustang discharged her in retaliation for her various objections to management's interpretation of Mustang's PTO policy. She further asserts that Mustang's articulated reasons for terminating her are a pretext for retaliation. Finally, she contends that genuine issues of material fact exist regarding Mustang proffered reasons for discharging her.

## IV. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that

evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

## V. ANALYSIS & DISCUSSION

### A. Waddell's Claim for Retaliation Under the FLSA

Although the parties dispute the causation and pretext elements of the retaliation claim, the Court focuses on the contention that Waddell's various email objections constituted "protected activity" within the meaning of the FLSA. The Court concludes that Waddell has failed to establish that she engaged in protected activity under Section 215(a)(3). Therefore, the Court need not address whether Waddell has made a factual showing regarding other elements of her *prima facie* case.

The heart of the controversy rests in the inquiry of whether Waddell's various email objections to management and to the HR staff's interpretation of the PTO policy, constitute an "informal complaint" sufficient to bring her actions within the "protected activity" scope under the FLSA's anti-retaliation provision. The FLSA provides, in relevant part, that "[i]t shall be unlawful for any person to . . . discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]" 29 U.S.C. § 215(a)(3).

The seminal case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), lays the framework for addressing FLSA retaliation claims. First, a plaintiff must make a *prima facie* showing of (1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action.

*Id.* If a plaintiff meets this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its decision. *Id.* The burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for retaliation. *Id.*

### 1. Protected Activity

Waddell asserts that she engaged in protected activity when she contacted Harberts regarding her timecard rejection and when she sent email objections to Gerstner on October 21 and November 4, 2013 regarding Mustang's PTO policy change. To establish that she participated in an FLSA protected activity, Waddell must first demonstrate that she filed a "complaint." *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 623 (5th Cir. 2008) (if an employee filed a complaint, then he engaged in protected activity under the FLSA. If not, he has not engaged in protected activity as a matter of law); *see also Lasater v. Texas A & M Univ.-Commerce*, 495 F. App'x 458, 460 (5th Cir. 2012). An informal, internal complaint may suffice. *See Hagan*, 529 F.3d at 626. "[A] complaint is 'filed' when 'a reasonable, objective person would have understood the employee' to have 'put the employer on notice that [the] employee is asserting statutory rights under the [Act].'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 131 S. Ct. 1325, 1335, 179 L. Ed. 2d 379 (2011).

In filing a complaint, the FLSA requires fair notice to an employer that an employee is making a complaint that could subject the employer to a later claim of retaliation. *See id.* Complaints may be written or oral. *See id.* "[H]owever, not all 'abstract grumblings' or vague expressions of discontent are actionable as complaints." *Hagan*, 529 F.3d at 626 (citing *Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999)). "[The] complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten*, 131 S. Ct.

at 1335. Thus, it is clear that the precedent regarding filing a complaint "require the informal complaint to concern some violation of law." *Hagan*, 529 F.3d at 626; *see also Lasater*, 495 F. App'x 458 at 461 (5th Cir. 2012) (although an employee "need not explicitly refer to the FLSA statute itself, the complaint does need to be framed in terms of potential liability."). In short, "an employee's communication does not constitute a complaint unless that employee 'somehow steps outside of his normal job role' so as to make clear to the employer that the employee is 'taking a position adverse to the employer.'" *Lasater*, 495 Fed.Appx. at 461–62 (citing *Hagan*, 529 F.3d at 627–28).

In *Hagan*, the 5th Circuit utilized these principles to hold that the employee did not file a complaint because the employee never framed any of his objections in terms of the potential illegality over the disputed overtime policy. *Hagan*, 529 F.3d at 630. The Supreme Court in *Kasten* followed the same analysis holding that the employee had filed a complaint when he repeatedly raised concerns that it was illegal to place time clocks in a location that excluded employees from being properly paid for their time worked. *Kasten*, 131 S. Ct. at 1330. The Supreme Court particularly noted that the employee made comments such as, you will "lose in court," "he was thinking of starting a law suit" and he approached human resources because the company's actions were "illegal." *Id.*

As support for her claim that she engaged in "protected activity" within the meaning of the FLSA, Waddell directs the Court to several email responses to Gerstner's timecard rejections. Waddell contends that these emails could have been a factor in her termination. Specifically, her October 21, 2013, email response contained the following:

> I went to a memorial service this past Friday. Even though it was not a family member, I felt entitled to use my PTO, but since I worked over 40 hours, I felt you would reject my timecard. I do not understand why I am penalized for working long hours. All my working hours are billable, so the company is not

> losing money. I am entitled to use my earned PTO when I am away from the office, …but as the Oracle rep told me…………… it's up to the manager's discretion.

(Dkt. No. 20, Ex. C at 13-14) (emphasis in original).

Likewise, on November 4, 2013, Waddell sent two email responses that contained the following:

> Two whole days on vacation and I cannot use my earned PTO?? Not laying down on this one until I speak with more people.

(Dkt. No. 20, Ex. C at 17).

> I have been employed with this company for eighteen months. Now in the past month, my time is being rejected because someone changed the rule about PTO. I have not had any problems using my earned PTO, in increments of 30 minutes, during the times that I have been away from the office for well over a year. It might take me a minute, but that's my target. When I have exhausted all avenues, then I will let you know.

(Dkt. No. 20, Ex. C at 16).

The e-mails do not establish that Waddell was opposing or protesting against any unlawful employment practice. Rather, the e-mails merely record Waddell's offense with the policy change. In fact, Waddell emails acknowledge that she anticipated her timecard would be rejected in accordance with the new policy. Although the e-mails mentioned that she would exhaust all avenues and speak with other people, the emails do not state any illegal conduct on the part of Mustang.

In her deposition, Waddell testified that when she emailed Gerstner that she was going to, "speak with more people," she did not know who she would speak to: "I didn't have time to process it, because I was so busy on my desk … I just shot [Gerstner] a little something just to -- [sic] so I could get back to what I was doing." (Dkt. No. 18, Ex. A, Waddell Depo. at 134:6-21). Further, there is no indication that the content of the e-mail objections was a factor in Waddell's

termination. Thus, Waddell's email objections do not demonstrate that she engaged in "protected activity" in support of an FLSA claim.

Moreover, Waddell's objection to Mustang's policy change is not an issue contemplated by the FLSA. "Congress enacted the FLSA as a means of regulating minimum wages, maximum working hours, and child labor in industries that affected interstate commerce." *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1024 (5th Cir.1993) (citing 29 U.S.C. § 202)). "The FLSA requires any employee working over 40 hours in a week to be paid overtime, premium compensation at the rate of one and one-half times their 'regular rate' of pay." *York v. City of Wichita Falls*, 48 F.3d 919, 921 (5th Cir.1995) (citing 29 U.S.C. § 207(a)(1)).

Here, Waddell is not arguing that she worked over 40 hours in a week and was not compensated for the overtime hours worked. She admits that she was paid at the overtime rate for the overtime hours she physically worked. (*See* Dkt. 18, Ex. A, Waddell Depo. at 45:6-14). Instead, Waddell is arguing that she is entitled to apply PTO towards the accumulation of hours over 40 in a work week because Mustang had previously allowed the practice. This argument exceeds the scope of the FLSA.

Waddell further argues that Gerstner made a misrepresentation about the policy change because the policy itself did not "materially change." The Court is not persuaded. While Gerstner's September 18, 2013, email to the administrative staff noted a "revised PTO policy," there is no indication that Gerstner intended to mislead Waddell. The Court is of the opinion that Mustang simply intended to enforce its already existing policy, which had not been strictly enforced in the past. The PTO policy was a privilege that Mustang allowed its employees to utilize in order to promote "balance in their lives." (*See* Dkt. No. 20, Ex. C at 10). However, the fact that Mustang previously allowed such conduct does not create an enforceable right.

Therefore, Mustang is entitled to summary judgment on Waddell's retaliation claim as a matter of law.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, Mustang's motion for summary judgment is **GRANTED**.

It is so **ORDERED**.

SIGNED on this 30th day of September, 2015.

_____
Kenneth M. Hoyt
United States District Judge